[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 373 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 374 
Suit for injunction by the Continental Distilling Corporation against Liquor Store, Inc., to enjoin the sale of plaintiff's whiskey at less than minimum retail sales price established under the Fair Trade Act, wherein Webb's City, Inc., was permitted to intervene as a defendant. To review an adverse order, the defendants bring certiorari.
Writ of certiorari issued and order quashed.
If the decision of this case is to rest upon precedents from other jurisdictions then the conclusion is not difficult. We confess they lead to an approval of the act. F.S.A. § 541.01 et seq. Our first duty, however, is to our own constitution as well as the superior federal law. This court has, perhaps more so than many others, been alert to any trespass upon the citizens' constitutional rights. See State v. City of Stuart, 97 Fla. 69,120 So. 335, 64 A.L.R. 1307. This legislation is a species of the relatively recent national recovery legislation. It was conceived at a time when there were surpluses and general need for such a law in certain basic commodities. The courts approving similar acts scarcely had an opportunity to observe its effects other than as its proponents visualized its operation in futuro. We are in a more favored position as we have the benefit of the actual consequences flowing from its application.
There is yet another reason why we are constrained to reexamine the precedents to the contrary. That is, few of the cases treat the proposition of whether the legislation is within the scopeof the police power. The courts generally have accepted the premise of the proponents of the act; that it is in the interest of the general welfare to protect the property right in the trade mark and brand. We may concede, though it is not beyond question and not necessary to discuss here, that the owner of a trade mark and brand has a property right deserving the protection of law. Undoubtedly he has up to a point. Although without this act he has the protection afforded by law in common to all other properties. Is he entitled to more? If he may claim additional advantage, then he must look to the law emanating from the police power. If the vantage sought is personal as distinguished from the general public then the police power may not be invoked. The police power has been wisely restricted to those things which of necessity affect the public morals, public health or public safety. When a statute is brought into question resting upon the police power the courts have the power and duty to inquire whether it is within constitutional limits. To be valid it must apply to the general public as distinguished from a particular group or class. The idea of general welfare should banish the thought that the state may subordinate the right of one group of citizens to advance the welfare of another. The legislature is the judge of the wisdom of the regulation but the court may say whether the act is within constitutional limits. It is particularly a judicial question whether the legislative act is for a private or public purpose. The right to own, hold and enjoy property is nearly absolute. The statute cannot be the means of leveling unequal fortunes, neither can it favor one segment of the people at the expense of another. These principles are fundamental. See 11 Am.Jur., Constitutional Law, Sec. 245 et seq. If the stronger and more influential may impose their wills upon minorities where the general welfare does not require such legislation then the weaker and less fortunate will soon be vanquished. Constitutional law never sanctions the granting of sovereign power to one group of citizens to be exercised against another unless the general welfare is served. The effect of this act is to grant by indirection sovereign power to one person *Page 375 
(not necessarily a citizen) to be exercised against another.
This statute is, in fact, a price fixing statute. The power to fix the price is vested in an interested person who is not an official. There is no review of his act. He is required to consult with no one and in no sense is required to take into consideration the cost of the article or the reasonableness thereof. We need look no further than our own jurisdiction for precedents to turn the decision. We have many times been confronted with price fixing statutes in one form or another. Throughout all our holdings we have recognized as basic that for a statute such as this to be upheld there must be some semblance of a public necessity for the act and it must have some relation to the public health, morals or safety. Further, the price fixing agency must be duly constituted by law and due notice of its action. All of which contemplates that the prices fixed must have some regard to reason besides having a public concern. State v. Ives, 123 Fla. 401, 167 So. 394; Scarborough v. Webb's Cut Rate Drug Company, Inc., 150 Fla. 754, 8 So.2d 913; Miami Laundry Co. v. Florida Dry Cleaning Laundry Board, 134 Fla. 1, 183 So. 759, 119 A.L.R. 956. (The latter case related to health and sanitation in the laundry business.)
Many of the precedents from other jurisdictions on similar acts were made upon the proponents' statement that the general welfare would be served. The exact contrary is now perfectly apparent as will appear from a study of Summary and Conclusion of the Federal Trade Commission, December 13, 1946. We quote from Page LXI: "The essence of resale price maintenance is control of price competition. Lack of adequate enforcement of the antitrust laws leaves a broad field for the activities of organized trade groups to utilize it for their own advantage and to the detriment of consumers. * * *"
Some of the states have given a broader sphere of operations to the police power than we have. Some authorities inquire only whether the general welfare is in some measure served. This elevates the state over the individual. Under this concept constitutional guaranties are of no effect to minorities and majorities have no need for them. Then, too, some of the state courts have receded from their holdings because of the United States Supreme Court. See Bourjois Sales Corporation v. Dorfman,273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411; Old Dearborn Distributing Company v. Seagram-Distillers Corporation and McNeil v. Joseph Triner Corporation, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476. The gist of the holding in this case was that the state act did not on the grounds considered contravene the Federal Constitution. The court of last resort of each sovereign state is the final arbiter as to whether the act conforms to its own constitution whereas the federal courts are concerned only with whether the act offends the Federal Constitution. See 11 Am.Jur., Constitutional Law, Section 103.
It is also well to note that when this type of law was first promulgated its purpose was to protect long established brands which had acquired a substantial value. As time passed and one court after another approved them, perhaps because another court had, little if any inquiry was made of the original purpose. Now new brands by the thousands are created overnight to get advantage of the act. It is well to remember also that this act applies to every kind of article including such necessities as food and drugs. In that connection it is enlightening to read fully the Summary of the Federal Trade Commission relative to the means employed by certain retail groups to coerce the manufacturers to fix prices for the retailer's benefit and to the detriment of both the manufacturer and the consuming public.
Our conclusion is that the act is arbitrary and unreasonable and violates the right to own and enjoy property; one economic group may not have the sovereign power of the state extended to it and use it to the detriment of other citizens. In that case the legislation serves a private rather than a public purpose. The sovereign power must not be delegated to a private citizen to be used for a private purpose and especially where there is no state supervision. There is yet another *Page 376 
reason why relief should be denied this plaintiff. The answer discloses that this plaintiff is one of about forty subsidiary corporations — all owned and controlled by a parent corporation, Public Industries, Inc., a Pennsylvania corporation; that this parent corporation and four other corporations control eighty to ninety per cent of the alcoholic liquors in the United States; that these several corporations utilize numerous brands and are taking advantage of this act to create monopolies in alcoholic liquors and coerce this intervenor and others to pay arbitrary, excessive and unreasonable prices thereby fixing prices and wholly stifling competition. This allegation is not controverted. His contract is, therefore, contrary to public policy and void, and relief should be denied even though the act is not unconstitutional. The act in terms provides that before a contract can be enforced under it (1) there must be competition between manufacturers or producers of the same general commodity; (2) that competition must be free and open. This plaintiff has not only failed to make a case under the act but the answer makes a complete defense.
The writ is issued and the order is quashed.
TERRELL, HOBSON, and BARNS, JJ., concur.
SEBRING, J., concurs in conclusion and judgment.
BARNS, J., concurs with opinion, with ADAMS, C.J., THOMAS, SEBRING and HOBSON, JJ., concurring.
HOBSON, J., concurs specially with opinion, with ADAMS, C.J., and TERRELL, SEBRING, and BARNS, JJ., concurring.
CHAPMAN, J., dissents.