492 So.2d 1032 (1986)
DEPARTMENT OF INSURANCE, Appellants,
v.
DADE COUNTY CONSUMER ADVOCATE'S OFFICE, Appellees.
No. 66178.
Supreme Court of Florida.
June 3, 1986.
Rehearing Denied September 10, 1986.
Donald A. Dowdell, Gen. Counsel, Dept. of Ins., Curtis A. Billingsley and Jim Smith, Atty. Gen. and Kent A. Zaiser and Louis F. Hubener, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, for appellants.
Mary Charlotte McCall, Tallahassee and William B. Schultz, Public Citizen Litigation Group, Washington, D.C., for appellees.
William O. Birchfield and Dennis E. Hayes of Martin, Ade, Birchfield & Johnson, Jacksonville, for American Counsel of Life Ins., amicus curiae.
Frederick B. Karl, Arthur C. Beal, Jr. and James N. McConnaughhay of Karl, McConnaughhay, Roland & Maida, Tallahassee, for Florida Ass'n of Ins. Agents, amicus curiae.
J. Robert McClure, Jr. and Alan C. Sundberg of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for Florida Ass'n of Life Underwriters, amicus curiae.
Stephen C. O'Connell of Cason & Henderson, Tallahassee, and William N. Albus, Washington, D.C., for Nat. Ass'n of Life Underwriters, amicus curiae.
George E. Owen, Tallahassee and William R. Heerman, Appleton, Wis., for the Nat. Fraternal Congress of America, amicus curiae.
Sandra L. Gilfillan, Kansas City, Mo., for Nat. Ass'n of Ins. Com'rs, amicus curiae.
Carl K. Oshiro and Harry M. Snyder, San Francisco, Cal., for Consumers Union of U.S., Inc., amicus curiae.
OVERTON, Justice.
This appeal from Dade County Consumer Advocate's Office v. Department of Insurance, 457 So.2d 495 (Fla. 1st DCA 1984), concerns the validity of sections 626.611(11) and 626.9541(1)(h)1, Florida Statutes *1033 (1983),[1] which prohibit insurance agents from accepting from their customers a commission lower than the commission set by the insurer. The First District Court of Appeal declared these "anti-rebate statutes" unconstitutional, finding that they are an invalid exercise of the state's police power. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We find these statutes unnecessarily limit the bargaining power of the consuming public and, in accordance with prior consumer decisions of this Court, we affirm the decision of the district court and hold that these statutes are unconstitutional to the extent they prohibit rebates of insurance agents' commissions.
This cause commenced when appellee, the Dade County Consumer Advocate's Office, filed a complaint in circuit court alleging that the anti-rebate statutes prevent "price competition with respect to insurance agents' commissions," thereby depriving Florida consumers of their property without due process of law in violation of article I, section 9, of the Florida Constitution. The trial judge found that the challenged statutes "are a valid exercise of the police power ... and a valid exercise of [the state's] regulatory authority to protect the public from discrimination," and entered summary judgment for the Department of Insurance. The district court reversed, concluding:
We are unable to find any legitimate state interest justifying the continued existence of the anti-rebate statutes.
... .
In the absence of any apparent rational relation between the prohibition of rebates and some legitimate state purpose in safeguarding the public welfare, we conclude the anti-rebate statutes ... constitute an unjustified exercise of the police power of this state... .
Id. at 497-99. In reaching its decision, the court evaluated and rejected each of the Department's asserted justifications for the statutory ban against rebates, including arguments that the statutes guarantee insurer solvency and prevent discrimination among insureds in the same actuarial class.
Before this Court, the Department of Insurance first argues that the district court applied a too-rigorous standard of review in stating that the statutes must "reasonably and substantially promote the public health, safety or welfare." Id. at 497 (emphasis added). The Department and the various organizations appearing as amici curiae next assert that these anti-rebate statutes should be upheld on the ground that they reasonably advance the economic protection of Florida consumers *1034 by establishing uniform rates among members of the same actuarial class; that, in the absence of these laws, similarly classified policyholders of the same insurer will pay different prices for the same policy; that consumers' efforts to compare costs of similar policies will be thwarted; that consumers will be more likely to focus on the size of the rebate than on the quality of the insurance; that premiums will increase as a result of pressure by agents for larger commissions to enable them to offer larger rebates; and that many policies will lapse because consumers will replace their policies each year with new policies sold by different agents who can offer larger rebates as a result of the prevailing first-year commission structures, resulting in higher administrative costs.
We are concerned with the narrow issue of whether a statute that prohibits an insurance agent from reducing the amount of the commission he or she will earn from selling the insurance is valid. Historically, this Court has carefully reviewed laws that curtail the economic bargaining power of the public. In fact, this Court was one of the first to hold unconstitutional a "fair trade act" that allowed a manufacturer to establish a minimum retail price for which the retailer could sell a product to the consumer. See Liquor Store v. Continental Distilling Corp., 40 So.2d 371 (Fla. 1949). We found that such legislation is not within the scope of the state's police power and noted that "[c]onstitutional law never sanctions the granting of sovereign power to one group of citizens to be exercised against another unless the general welfare is served." Id. at 374 (emphasis in original). We concluded that the act was arbitrary, unreasonable, and violated the right to own and enjoy property. In Larson v. Lesser, 106 So.2d 188 (Fla. 1958), we struck down as unconstitutional a statute that prohibited a public adjuster who represents insureds from soliciting business on the ground that the restraint imposed was not rationally related to the public's welfare. In Stadnik v. Shell's City, Inc., 140 So.2d 871 (Fla. 1962), this Court held invalid a pharmacy board rule that prohibited the advertisement of the name or price of prescription drugs on the basis that it was an attempt to prohibit price competition which had no reasonable relation to public safety, health, morals or general welfare. In Florida Board of Pharmacy v. Webb's City, Inc., 219 So.2d 681 (Fla. 1969), we held invalid a statute which prohibited retail drug establishments from using the media to promote the use or sale of prescription drugs.
In recent years, the United States Supreme Court also has struck down governmental statutes or regulations that restrict the competitive pricing of consumer services. While recognizing that states have broad power to establish standards for licensing practitioners and regulating the practice of professions within their boundaries, the Court, in Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), determined that a minimum fee schedule for attorneys enforced through the prospect of professional discipline by the state bar association and the state supreme court violated the Sherman Anti-Trust Act. In Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Court held unconstitutional, on first and fourteenth amendment grounds, that part of a statute declaring it unprofessional for a pharmacist to advertise prices for prescription drugs. In Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Court held that a disciplinary rule prohibiting attorneys from advertising the cost of their services violated the first amendment.
In considering the validity of a legislative enactment, this Court may overturn an act on due process grounds only when it is clear that it is not in any way designed to promote the people's health, safety or welfare, or that the statute has no reasonable relationship to the statute's avowed purpose. Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974) (citing Atlantic Coastline Railroad Co. v. City of Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 *1035 L.Ed. 721 (1914)). Although the district court recited an incorrect standard of review in part of its opinion, we conclude that the error did not affect the result reached in this case. We find the district court properly found no relationship between the enactments and any legitimate state interest and, therefore, it was not called upon to determine the degree to which the anti-rebate statutes advance a state interest.
From our review of the record, we find no identifiable relationship between the anti-rebate statutes and a legitimate state purpose in safeguarding the public health, safety or general welfare. Insurance agents' commissions do not affect the net insurance premium and are unrelated to the actuarial soundness of insurance policies. The other arguments presented by the Department of Insurance in support of the statutes' constitutionality have been properly responded to by the district court in its opinion. Many of these arguments have been previously unsuccessfully made to uphold statutes or regulations limiting consumers' bargaining power for other services.
For the reasons expressed, we find sections 626.611(11) and 626.9541(1)(h)1, Florida Statutes (1983), are unconstitutional under article I, section 9, of the Florida Constitution to the extent they prohibit insurance agents from rebating any portion of their commissions to their customers.
It is so ordered.
McDONALD, EHRLICH and BARKETT, JJ., concur.
BOYD, C.J., dissents with an opinion, in which ADKINS and SHAW, JJ., concur.
BOYD, Chief Justice, dissenting.
Although not explicitly stated, implicit in the Court's holding are the following propositions: that the courts of Florida have broad authority to determine whether acts of the legislature serve the public interest; that courts may generally scrutinize legislation to determine whether it achieves a stated legislative purpose with sufficient success or precision; and that courts may nullify laws not shown to serve the public interest to the courts' satisfaction. These propositions are totally erroneous and their application in this case represents an aggrandizement of judicial power that is antithetical to the basic constitutional doctrine of separation of powers.[1]
The error in the majority opinion results primarily from the fact that it implicitly places the burden on the State Department of Insurance to demonstrate that the law in question is reasonably related to the achievement of some proper objective. The majority reasons that because it can "find no identifiable relationship between the anti-rebate statutes and a legitimate state purpose," maj. op. at 1034, the statute must fall. This approach conveys the erroneous impression that a regulatory law emerges from the legislative arena saddled with a burden requiring that it be established that the law is reasonably related to the achievement of some permissible state objective. In fact, the law under attack should be presumed valid, and the burden is on those who challenge it to demonstrate the lack of any such relationship. That burden has not been carried here.[2]
There is no allegation that the legislation under attack violates any constitutional *1036 rights or penalizes or infringes upon any constitutionally protected liberty. Nor does it establish any suspect classification. It is a regulation of economic activities and relationships. The challenge is purely of the so-called "substantive due process" variety. When faced with such a challenge, the power of a court to inquire into the validity of a law is severely limited, and rightly so. In order to declare the law invalid, a court must find that the law is simply and absolutely arbitrary, resting on no conceivable rational relation to the public welfare as determined by the legislature. In evaluating legislation under this "reasonable relation" test,
we do not concern ourselves with the wisdom of the Legislature in choosing the means to be used, or even whether the means chosen will in fact accomplish the intended goals; our only concern is with the constitutionality of the means chosen.
... .
... [Courts should presume] the existence of circumstances supporting the validity of the Legislature's action, in the absence of any evidence to the contrary.
Lasky v. State Farm Insurance Co., 296 So.2d 9, 15-16, 17 (Fla. 1974).
Many of the decisions relied upon in the majority opinion were cases in which legislation was challenged on the ground that it violated or impaired the exercise of some constitutionally guaranteed right, liberty, or immunity. The interest of "consumers" in purchasing insurance in a freely competitive market as opposed to a regulated or protected market is not among the fundamental rights of persons protected by either the United States Constitution or the Florida Constitution. Nor is there any taking of property by the state without compensation. Nor is there any suspect classification prompting special scrutiny under the equal protection clause. The Court's only inquiry under general due-process analysis in such a situation is whether the law is shown to be wholly arbitrary.
In the field of general economic regulation, where fundamental rights are not affected or impinged upon, all questions of "whether the best means of regulation has been chosen are directed more to the wisdom of the legislation than to its asserted irrationality." Belk-James, Inc. v. Nuzum, 358 So.2d 174, 177 (Fla. 1978). "It is not the function of this Court to determine the wisdom of legislation or to pass on its efficacy as a solution of the problem sought to be remedied." Williams v. Hartford Accident and Indemnity Co., 245 So.2d 64, 67-68 (Fla. 1971).
The police power embodies the sovereign prerogative of the people through the legislature to regulate all aspects of social life for the benefit of the health, morals, or welfare of the people. Carroll v. State, 361 So.2d 144 (Fla. 1978). "Statutes are presumed to be constitutional until the contrary is shown; and it is only when they manifestly infringe some provision of the Constitution that they can be declared void for that reason." Id. at 145. "The judiciary will not nullify legislative acts merely on grounds of the policy and wisdom of such act, no matter how unwise or unpolitic they might be, so long as there is no plain violation of the Constitution." Holley v. Adams, 238 So.2d 401, 405 (Fla. 1970).
The discretion of the legislature when exercised for the public welfare in selecting the subjects of policy regulations and in determining the nature and extent of such regulation is limited only by the requirements of fundamental law that the regulations shall not invade private rights secured by the Constitution. Everglades Sugar and Land Co. v. Bryan, 81 Fla. 75, 87 So. 68 (1921).
Carroll v. State, 361 So.2d at 147. "The economic interests of a state may justify the exercise of its continuing and dominant protective police power for the promotion of the general welfare, notwithstanding interference with lawful callings and even contracts." State ex rel. Municipal Bond & Investment Co. v. Knott, 114 Fla. 120, 124, 154 So. 143, 145 (1934). In State ex rel. Vars v. Knott, 135 Fla. 206, 212, 184 So. 752, 755 (1938), this Court said, "There *1037 is no constitutional objection" to legislative policy.
[A] policy ... may appear to some narrow and short sighted and even obnoxious but this alone does not render it unconstitutional.
... .
... [T]hese are questions of policy with which the courts are not concerned... .
Courts cannot protect those affected against unwise or even foolish legislation unless some provision of organic law is violated. For this reason, we are frequently called on to uphold acts that we would not have voted for had we been members of the legislature that enacted them... .
... Unless it be conclusively shown that the act is in derogation of some clear constitutional guaranty, the question of whether it is in the interest of the public welfare is one for the legislature to determine and in the determination of which it has a liberal discretion.
Id. at 212-14, 184 So. at 755. Numerous other decisions of this Court could be cited for these and similar propositions. See, e.g., State v. Gray, 435 So.2d 816 (Fla. 1983); Park Benziger & Co. v. Southern Wine and Spirits, Inc., 391 So.2d 681 (Fla. 1980); In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980); State v. Bales, 343 So.2d 9 (Fla. 1977); Pickerill v. Schott, 55 So.2d 716 (Fla. 1951).
The respondents in their brief refer to the fact that often in upholding legislation against challenges based on the assertion of lack of a rational basis, courts often articulate a possible reasonable basis for the legislation in question. Respondents infer from this fact the proposition that it is incumbent upon courts when legislation is challenged to announce or articulate the basis for the law in terms of public policy. In the field of general police power regulation, however, when no constitutional rights are affected, the legislation is presumed constitutional and no such speculation about legislative intentions is required. See State v. Bussey, 463 So.2d 1141, 1145 (Fla. 1985) ("It is not necessary that we provide specific justifications for the statute in terms of state policy... ."). Thus when courts respond to such challenges by setting forth possible legislative intentions or beliefs, such statements are clearly obiter dicta.
We have been inundated with argument about the need, wisdom, and effect of the statutes being challenged. We have been presented with a tremendous amount of material about the economic complexities of the insurance industry and the purposes and impact of the legislation in question. All of this material is of the kind that is more appropriate to a debate in the legislative chambers than to a legal argument on the permissibility of a regulation under the police power. It is enough to say that it has clearly been made to appear that there is a fairly debatable question about whether the legislation bears a reasonable relation to the achievement of an objective within the scope of the police power. The existence of such a debatable policy question is sufficient to put an end to all further judicial inquiry in this kind of case.
We need say no more than that the question may be regarded as fairly open to differences of opinion. .. . [T]he legislative determination in that respect, in the circumstances here disclosed, is conclusive so far as this court is concerned. Where the question of what the facts establish is a fairly debatable one, we accept and carry into effect the opinion of the legislature.
Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U.S. 183, 196, 57 S.Ct. 139, 145, 81 L.Ed. 109 (1936).
The cases cited in the majority opinion and in the respondents' brief do not support the Court's holding. Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), is readily distinguishable. The matter found to be illegal there was purely private activity rather than a state law. The activity was found to be a violation of the Sherman Antitrust Act. In the present case we have a duly enacted regulation of the Florida *1038 legislature and no showing that it runs afoul of any overriding law. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), and Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), were both cases where state law was found to restrict freedom of speech in violation of the first amendment. The statutes under attack here regulate not speech, but conduct  conduct which the Florida legislature apparently finds inimical to the public welfare.
Atlantic Coastline Railroad Co. v. City of Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914), was a case where some municipal ordinances were challenged on the ground that they had the effect of depriving a railroad company of property or the use of its property without due process of law. In rejecting the railroad's arguments, the Court said:
For it is settled that neither the "contract" clause nor the "due process" clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise... . And the enforcement of uncompensated obedience to a regulation established under this power for the public health or safety is not an unconstitutional taking of property without compensation or without due process of law.
232 U.S. at 558-59, 34 S.Ct. at 368.
Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974), dealt with the constitutionality of legislation regulating the operation of mobile home parks and affecting the legal relationship between park owners and park tenants. The Court noted that such an enterprise affects the public interest and is subject to regulation in furtherance of the public health, safety, morals, and general welfare. Nothing in that decision compels the result reached here unless it can be said that the statute under scrutiny is totally arbitrary.
In Stadnik v. Shell's City, Inc., 140 So.2d 871 (Fla. 1962), and Florida Board of Pharmacy v. Webb's City, Inc., 219 So.2d 681 (Fla. 1969), the Court struck down a pharmacy board rule and a statute, respectively, that prohibited the advertisement of the price, or any promotion of the use of prescription drugs. It was held that the rule and statute in question bore no relation to the public health, safety, morals, or welfare. It was found that there was not even a debatable question of whether the regulations bore any such relationship. Those cases are different from the present case and do not support the proposition that the statute in question here is arbitrary.
In Larson v. Lesser, 106 So.2d 188 (Fla. 1958), the Court, over the dissent of three justices, found invalid a statute prohibiting direct solicitation by a public adjuster on the ground of lack of "some sound basis of necessity to protect the public morals, health, safety or welfare." Id. at 191. In support of its conclusion, the Court found that the effect of the statute was absolutely to prohibit appellee from engaging in a lawful business. The dissenters said that the presumption of constitutionality had not been overcome. Whatever its precedential value and regardless of its erroneous statement of the rational basis test, Larson v. Lesser neither compels nor strongly supports the result reached in the present case.
Liquor Store, Inc. v. Continental Distilling Corp., 40 So.2d 371 (Fla. 1949), is easily distinguishable. At issue there was a so-called fair trade act which provided that agreements between trademark owners such as manufacturers, distillers, or wholesalers, on the one hand, and retailers on the other, providing for minimum prices to be charged upon retail sale of certain brandname products, were enforceable in Florida courts. The Court found that statute unconstitutionally arbitrary as an authorization *1039 of price-fixing which provided economic protection to one segment of the population at the expense of another. The statutes at issue in the present case cannot by any stretch of the imagination be called price-fixing statutes. Moreover, the majority must recognize that the legislature has the authority to regulate and even to fix insurance premium rates if deemed necessary by the legislature. Liquor Store, and the extensive body of decisional law pertaining to fair-trade acts, are not even closely analogous to this case. The Court is on very shaky ground in its reliance on Liquor Store.[3]
*1040 The remaining cases relied upon by the respondents provide weak support at most for the Court's conclusion. In Perry Trading Co. v. City of Tallahassee, 128 Fla. 424, 174 So. 854 (1937), a municipal ordinance prescribing rules and regulations governing the operation of auctions was invalidated on the ground that it excessively burdened the conduct of an otherwise lawful business activity without bearing a reasonable relation to the public health, safety, or morals. But the Court also mentioned the fact that the police power delegated to the city by the state did not include such a broad authority to interfere in business relations to further the general economic welfare. The Court also appears to have been influenced by some equal protection considerations in that only certain selected business activities were singled out for regulation. Like Liquor Store, the case is something of an anachronism, at least as far as the plenary regulatory power of a state legislature as now recognized is concerned.
In State v. Leone, 118 So.2d 781 (Fla. 1960), the invalidated statute in effect required that all sales of ball-point pens, hair brushes, and greeting cards within a drug store be conducted under the constant and immediate supervision of a licensed pharmacist. Sales of the same articles at a five-and-ten or stationery store next door were subjected to no such requirement. The Court found the law arbitrary. The decision affirms the power of the court to invalidate laws bearing no reasonable relation to the public welfare. But it provides no support for the proposition that the legislature's regulation of the insurance industry at issue here bears no such relation.
*1041 In Rabin v. Conner, 174 So.2d 721 (Fla. 1965), a statute and order of the Department of Agriculture had the effect of limiting the right to engage in celery production to a certain category of established producers. The law set up a monopoly and restricted entry into the field. The Court held that the law established a classification without a rational basis and was arbitrary. The Court said, "No authority need be cited for the proposition ... that the state may establish rigidly controlled monopolies when the public interest warrants." Id. at 726. But the Court found no basis by which the legislature could have concluded that celery production was so affected with a public interest as to justify such monopolization. Invalidation of the celery law there provides no support for the Court's conclusion that the legislature's regulation of the highly complex insurance industry at issue here should be invalidated.
Castlewood International Corp. v. Wynne, 294 So.2d 321 (Fla. 1974), invalidated a law that required retail sellers of beer and wine to pay for their wholesale purchases at the time of purchase, prohibiting any credit arrangements the parties to such a sale might otherwise make. The Court struck down the law on the ground of "a patent invidious discrimination" against beer and wine sellers in that retailers of distilled spirits were allowed to arrange credit with their wholesalers. The case provides no support for the respondents' position here.
In Horsemen's Benevolent and Protective Association v. Division of Pari-Mutuel Wagering, 397 So.2d 692 (Fla. 1981), a statute in effect levied a tax on the operation of horserace tracks and provided that the proceeds of the tax be paid over to a private organization. The avowed public purpose was to promote Florida's horse racing industry. However, there were no requirements or guidelines as to how the private association should spend the money, so the Court found a reasonable relation to the public purpose lacking. A tax is a deprivation of property subject to scrutiny by courts. The present case is, of course, easily distinguishable.
In Coca-Cola Co. v. State Department of Citrus, 406 So.2d 1079 (Fla. 1981), a statute on citrus product labelling was attacked as an "interference with the constitutionally protected right to pursue a lawful business." Id. at 1084. The Court's decision recognized that in the field of economic regulation, the legislature's discretion is broad and constitutional limitations are very narrow. "Under the police power doctrine, the state may interfere with otherwise protected areas if the interfering regulation bears `a reasonable relationship to the public safety, health, morals, and general welfare'... ." Id. at 1084-85. It is not clear what "protected area" was affected there other than with regard to the general proposition that a person has the general right, even though not constitutionally protected, to engage in commercial activity that is not prohibited. It is clear that in the present case no constitutionally protected rights are affected by the statute. Coca-Cola gives more support to the petitioner's position than to the respondents'.
Nothing in the majority opinion or the respondents' brief provides any authority for the proposition that the constitutional standard for validity of legislation under the due process clause of article I, section 9, Florida Constitution, is any different from that embodied in the due process clause of the United States Constitution and made binding on the states by the fourteenth amendment. If the Florida Constitution gives the Florida courts the power to invalidate legislation on the ground of lack of political, economic, or social wisdom, this Court should explicitly so hold.
The insurance industry in Florida is so affected with a public interest that it is subject to pervasive regulation. Chapters 624 through 632, 634, 637, 638, 639, 641, 642, and 651, Florida Statutes (1985), constitute the Florida Insurance Code. § 624.01, Fla. Stat. (1985). The legislature apparently believes that the insurance industry *1042 must be strictly regulated to secure and protect the rights and interests of insureds, insurers, and others, and generally to protect and promote the economic welfare of the people of the state. The legislature has the sovereign prerogative to determine whether an industry has such impact on the economy generally that the economic stability of the industry must be protected even at the expense of any interest of purchasers of services in the existence of a freely competitive market for those services. The United States Supreme Court has recognized that the insurance industry is subject to general regulation in furtherance of the public welfare as determined by the legislature. See, e.g., Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940); O'Gorman & Young, Inc. v. Hartford Fire Insurance Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324 (1931); German Alliance Insurance Co. v. Lewis, 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011 (1914).
The fact that ours is a system of limited government does not mean that any particular economic philosophy must be elevated to the stature of constitutional doctrine. When the legislature decides that a particular practice is injurious to the public welfare, the question of whether the prohibition thereof should be more narrowly or more broadly drawn is "a matter for the legislative judgment and not that of the courts." United States v. Carolene Products Co., 304 U.S. 144, 151, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938). The Court in Carolene Products set forth the now well accepted constitutional rule that
The existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of legislators.
Id. at 152, 58 S.Ct. at 783 (footnote omitted). Unless the law is so clearly arbitrary that the question is simply not a debatable one, courts must defer to the legislative judgment because "by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." Id. at 154, 58 S.Ct. at 784.
Contrary to the suggestions in Liquor Store relied upon so heavily by the majority, the constitution does not prohibit the economic protection of one segment of society even when achieved at the expense of another segment. There is scarcely a piece of legislation enacted that does not have disparate impact on different groups, working to benefit some to the detriment of others. Many are the legislative acts that have the effect, directly or indirectly, of "leveling unequal fortunes" said to be constitutionally forbidden in Liquor Store, at 374. For example, rent control laws can be viewed as requiring one segment of the populace (landlords) to subsidize another segment (tenants) in derogation of property rights. The justification offered for such a policy may be the general economic stability of the rental property marketplace or, stated more forthrightly, the protection of the latter group from economic depredation by the former. When carefully tailored, such laws are constitutionally permissible. See, e.g., Fisher v. City of Berkeley, 37 Cal.3d 644, 693 P.2d 261, 209 Cal. Rptr. 682 (1984). In the present case, no constitutional rights are involved. It is the legislature's prerogative to determine that insurers and insurance agents should be protected from the economic detriment that would occur if purchasers of insurance were in a position to negotiate for rebates from premiums. I believe the Department of Insurance has stated a much stronger case for the anti-rebate statutes in terms of general economic stability of the industry. But even if mere protection of agents at the expense of consumers were the only justification offered, there would be no constitutional impediment.
As has been made clear by the foregoing discussion, the power of courts to nullify laws as violations of "substantive due process" *1043 is very limited and can be invoked only when legislation is absolutely arbitrary and cannot, under any conceivable view of the operation of the law, be said to be rationally related to any valid state purpose. Moreover, the courts have no authority to pass on the validity, legitimacy, or permissibility of the state's purpose when constitutional rights or restrictions are not involved. State v. Gray, 435 So.2d 816 (Fla. 1983). "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed upon suspect lines... ." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976).
The reasons underlying this fundamental principle are simple and basic and should not be obscured from our view. The plenary power to adopt regulatory policy in the interest of the public welfare lies with the legislature. The legislature, in other words, makes law. Courts, in performing their function of adjudicating cases and controversies within their jurisdictions, interpret and apply the law when there is a dispute or conflict regarding how it applies. In the course of performing this function and exercising the authority to apply the law and decide cases, courts may ignore or decline to apply laws that violate constitutional rights when challenged by a person suffering an injury from such violation. But courts cannot make law on matters upon which the legislature has spoken when no constitutional violation appears.
The legislature is composed of elected representatives of the people. When standing for election to the legislature, candidates may and should express their views on policy questions. Thus after being elected, such representatives express the desires of their constituents when they propose and vote upon legislation. Judges, on the other hand, are chosen for office, whether by election or appointment, and retained in office, primarily on the strength of their legal skill, their personal integrity, their promise and undertaking to apply the law fairly and impartially, or some combination of these and similar factors as perceived by the electors or the appointing authority. Judges normally do not campaign for election or apply for appointment on the basis of their personal views on policy questions and such personal views should have no bearing on their performance of their judicial duties. If a regulation adopted by the legislature does not serve the public interest, or achieves a purpose not desire by the public, the forum in which persons desiring to change the law should seek relief is the legislature. Policy questions are essentially political questions and must be left, under our constitutional form of government, to the elected lawmakers. The notion that acts of the legislature are not full-fledged laws until they receive an official judicial imprimatur is completely erroneous.
In the district court of appeal below, the Department of Insurance correctly cited to the many court decisions from all around the country holding that courts must defer to the legislative judgment in matters of regulation of the insurance industry. The district court in its opinion responded: "The precedential value and persuasiveness of these cases are severely limited by the impact of the revolution in consumer's rights which has occurred since the turn of the century." 457 So.2d at 498 (footnote omitted). The great glory of our constitutional system of democratic government is that "revolutions" in social, political, economic, and legal thought can be translated into public policy quite readily  through the ballot box. They should not be imposed from above by appointed judges in contravention of the public will.
I would quash the decision of the district court of appeal and direct that the judgment of the circuit court be affirmed.[4]
ADKINS and SHAW, JJ., concur.
NOTES
[1] Section 626.611 provides, in pertinent part:

The department shall deny, suspend, revoke, or refuse to renew or continue the license of any agent, solicitor, or adjuster or the permit of any service representative, supervising or managing general agent, or claims investigator, and it shall suspend or revoke the eligibility to hold a license or permit of any such person, if it finds that as to the applicant, licensee, or permittee any one or more of the following applicable grounds exist:
... .
(11) Rebating, or attempt thereat, or unlawfully dividing or offering to divide his commission with another.
Section 626.9541(1) reads, in pertinent part, as follows:
UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.  The following are defined as unfair methods of competition and unfair or deceptive acts or practices:
... .
(h) Rebates. 
1. Except as otherwise expressly provided by law, or in an applicable filing with the department, knowingly:
a. Permitting, or offering to make, or making, any contract or agreement as to such contract other than as plainly expressed in the insurance contract issued thereon;
b. Paying, allowing, or giving, or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance contract, any rebate of premiums payable on the contract, any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract;
c. Giving, selling, or purchasing, or offering to give, sell, or purchase, as inducement to such insurance contract or in connection therewith, any stocks, bonds, or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits accrued thereon, or anything of value whatsoever not specified in the insurance contract.
[1] It should be pointed out that respondent Dartland, head of the Dade County Consumer Advocate's Office, alleged that he had tried and failed to get a life insurance agent to rebate part of the commission to be earned on a life insurance policy. Mr. Dartland paid the full premium and thus at least could argue that he had suffered an economic injury due to the prohibition on negotiation on the matter of commission. By stating that the action was brought by the Dade County Consumer Advocate's Office, the majority opinion give the erroneous impression that an agency or group may simply go to court to invalidate legislation without regard to the existence of some actual or threatened injury giving rise to a justiciable case or controversy.
[2] Moreover, the "record" the majority refers to having reviewed consists of the complaint, motions to dismiss, motions for summary judgment, legal memoranda, and the trial court's final summary judgment finding no issues of material fact. There has been no evidence presented in this proceeding in support of the challenge to the constitutionality of the statutes.
[3] Moreover, it can very well be argued that Liquor Store, viewed in the light of current knowledge and understanding of constitutional jurisprudence, was wrongly decided. In the first place, the Court acknowledged that its ruling on the constitutionality of the statute was unnecessary since the statute only gave a trademark owner the right to an injunction against price cutting if the commodities in question were being sold in free and open competition which was not the case. That is, the complainant could not prevail in its action for injunction because the defendant had set up a complete and unrebutted defense under the statute. The Court reached out and struck down the statute anyway.

Furthermore, the Court in Liquor Store purported to treat as a constitutional question the issue of "whether the legislation is within the scope of the police power" 40 So.2d at 374 (emphasis in original). The Court's decision was predicated on the existence of judicial power to declare that economic activity, not constitutionally protected but traditionally unregulated, was beyond the reach of the police power. The very language of the opinion betrays the error in the Court's thinking:
The courts generally have accepted the premise of the proponents of the act; that it is in the interest of the general welfare to protect the property right in the trade mark and brand. We may concede, thought it is not beyond question and not necessary to discuss here, that the owner of a trade mark and brand has a property right deserving the protection of law. Undoubtedly he has up to a point. Although without this act he has the protection afforded by law in common to all other properties. Is he entitled to more? If he may claim additional advantage, then he must look to the law emanating from the police power. If the vantage sought is personal as distinguished from the general public then the police power may not be invoked. The police power has been wisely restricted to those things which of necessity affect the public morals, public health or public safety. When a statute is brought into question resting upon the police power the courts have the power and duty to inquire whether it is within constitutional limits. To be valid it must apply to the general public as distinguished from a particular group or class. The idea of general welfare should banish the thought that the state may subordinate the right of one group of citizens to advance the welfare of another. The legislature is the judge of the wisdom of the regulation but the court may say whether the act is within constitutional limits. It is particularly a judicial question whether the legislative act is for a private or public purpose. The right to own, hold and enjoy property is nearly absolute. The statute cannot be the means of leveling unequal fortunes, neither can it favor one segment of the people at the expense of another. These principles are fundamental. See 11 Am.Jur., Constitutional Law, sec. 245 et seq. If the stronger and more influential may impose their wills upon minorities where the general welfare does not require such legislation then the weaker and less fortunate will soon be vanquished. Constitutional law never sanctions the granting of sovereign power to one group of citizens to be exercised against another unless the general welfare is served. The effect of this act is to grant by indirection sovereign power to one person (not necessarily a citizen) to be exercised against another.
This statute is, in fact, a price fixing statute. The power to fix the price is vested in an interested person who is not an official. There is no review of his act. He is required to consult with no one and in no sense is required to take into consideration the cost of the article or the reasonableness thereof. We need look no further than our own jurisdiction for precedents to turn the decision. We have many times been confronted with price fixing statutes in one form or another. Throughout all our holdings we have recognized as basic that for a statute such as this to be upheld there must be some semblance of a public necessity for the act and it must have some relation to the public health, morals or safety. Further, the price fixing agency must be duly constituted by law and due notice of its action. All of which contemplates that the prices fixed must have some regard to reason besides having a public concern. State v. Ives, 123 Fla. 401, 167 So. 394 [1936]; Scarborough v. Webb's Cut Rate Drug Company, Inc., 150 Fla. 754, 8 So.2d 913 [1942]; Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759, 119 A.L.R. 956 [1938]. (The latter case related to health and sanitation in the laundry business.)
Many of the precedents from other jurisdictions on similar acts were made upon the proponents' statement that the general welfare would be served. The exact contrary is now perfectly apparent as will appear from a study of Summary and Conclusion of the Federal Trade Commission, December 13, 1946. We quote from Page LXI: "The essence of resale price maintenance is control of price competition. Lack of adequate enforcement of the antitrust laws leaves a broad field for the activities of organized trade groups to utilize it for their own advantage and to the detriment of consumers. * * *"
Some of the states have given a broader sphere of operations to the police power than we have. Some authorities inquire only whether the general welfare is in some measure served. This elevates the state over the individual. Under this concept constitutional guaranties are of no effect to minorities and majorities have no need for them. Then, too, some of the state courts have receded from their holdings because of the United States Supreme Court. See Bourjois Sales Corporation v. Dorfman, 273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411 [1937]; Old Dearborn Distributing Company v. Seagram-Distillers Corporation and McNeil v. Joseph Triner Corporation, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476. The gist of the holding in this case was that the state act did not on the grounds considered contravene the Federal Constitution. The court of last resort of each sovereign state is the final arbiter as to whether the act conforms to its own constitution whereas the federal courts are concerned only with whether the act offends the Federal Constitution. See 11 Am.Jur., Constitutional Law, Section 103.
It is also well to note that when this type of law was first promulgated its purpose was to protect long established brands which had acquired a substantial value. As time passed and one court after another approved them, perhaps because another court had, little if any inquiry was made of the original purpose. Now new brands by the thousands are created overnight to get advantage of the act. It is well to remember also that this act applies to every kind of article including such necessities as food and drugs. In that connection it is enlightening to read fully the Summary of the Federal Trade Commission relative to the means employed by certain retail groups to coerce the manufacturers to fix prices for the retailer's benefit and to the detriment of both the manufacturer and the consuming public.
Our conclusion is that the act is arbitrary and unreasonable and violates the right to own and enjoy property; one economic group may not have the sovereign power of the state extended to it and use it to the detriment of other citizens. In that case the legislation serves a private rather than a public purpose. The sovereign power must not be delegated to a private citizen to be used for a private purpose and especially where there is no state supervision.
40 So.2d at 374-375. The decision in effect held that the Florida Constitution imposed greater restrictions on the power of the legislature to regulate economic activity than were imposed by the fourteenth amendment to the United States Constitution. See Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109 (1936). We should either embrace that proposition explicitly or disavow it. I hold to the latter view.
[4] The very most the Court should do is direct reversal of the summary judgment and remand for a trial on the merits.