601 So.2d 234 (1992)
SIXTY ENTERPRISES, INC., Appellant,
v.
ROMAN & CIRO, INC., Appellee.
No. 91-2967.
District Court of Appeal of Florida, Third District.
May 26, 1992.
Rehearing Denied June 30, 1992.
*235 Robert Urich, Miami and Irma Hernandez, Hialeah, for appellant.
Huey, Guilday, Kuersteiner & Tucker, and Mike Huey and Geoffrey B. Schwartz, and Vikki R. Shirley, Tallahassee, Stewart, Damsky, Markus & Konski and Luis S. Konski, Miami, for appellee.
Before BARKDULL, NESBITT and LEVY, JJ.
LEVY, Judge.
For the reasons discussed below, we uphold the constitutionality of the Motor Fuel Marketing Practices Act, Chapter 526, Florida Statutes, and affirm the trial court order granting a temporary preliminary injunction against the defendant retail motor fuel seller.
Roman & Ciro, Inc., a motor fuel retail seller, brought suit against a competitor retailer of motor fuel, Sixty Enterprises, Inc., seeking injunctive relief and damages. Roman & Ciro alleged that Sixty Enterprises was selling motor fuel below its cost, in violation of Section 526.304(1)(a), Florida Statutes (1989), of the Motor Fuel Marketing Practices Act.[1] Roman & Ciro also filed a motion for a temporary injunction. At the hearing on the motion,[2] Sixty Enterprises admitted that it had sold motor fuel below its cost, but stated that it had only done so to meet other competition. The trial court granted Roman & Ciro's motion and issued a temporary injunction, pursuant to Section 526.312 of the Act, enjoining all the parties, including Sixty Enterprises, from selling motor fuel below cost, unless the party selling below cost could document that it was doing so in order to meet the equally low price of a competitor. Only by showing proof that the low price was necessary to meet the competition, is a party entitled, under Section 526.304(2)(b) *236 of the Act, to sell below its cost. In this appeal, Sixty Enterprises challenges the constitutionality of the Act, arguing that it unduly restricts the economic bargaining power of consumers and is not rationally related to furthering the general public welfare. We disagree.
We note, as a threshold consideration, that judicial review of legislation enacted for the protection of the public health, safety, or welfare, is limited to a determination of whether the means utilized by the State bear a rational or reasonable relationship to a legitimate state interest. Belk-James, Inc. v. Nuzum, 358 So.2d 174, 175 (Fla. 1978). All legislation is endowed with a strong presumption of validity, and a court may not substitute its judgment, for that of the legislature, as to the wisdom and policy of a particular statute. Hamilton v. State, 366 So.2d 8 (Fla. 1978); Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976); Jones v. Gray & Sons, 430 So.2d 8 (Fla. 3d DCA 1983). In matters concerning the regulation of business, it is up to the legislature to determine whether a public necessity requires a given business to be regulated under the police power of the State. Miami Laundry Co. v. Florida Dry Cleaning & Laundry Bd., 134 Fla. 1, 183 So. 759 (1938).[3] Thus, the narrow question before this court is simply whether the Act is rationally or reasonably related to furthering a legitimate State objective.
Turning to the Act itself, Section 526.302 of the Act articulates the legislature's objectives:
The Legislature finds that fair and healthy competition in the marketing of motor fuel provides maximum benefits to consumers in this state, and that certain marketing practices which impair such competition are contrary to the public interest. Predatory practices and, under certain conditions, discriminatory practices, are unfair trade practices and restraints which adversely affect motor fuel competition. It is the intent of the Legislature to encourage competition and promote the general welfare of citizens of this state by prohibiting such unfair practices.
Section 526.302, Florida Statutes (1991). Thus, it is clear that the Legislative intent in enacting the Act was to protect Florida consumers by protecting and promoting fair competition in motor fuel marketing.[4] It is beyond question that protecting competition is in the public interest and is an important objective of both state and federal legislative bodies.[5] Healthy competition *237 is valued because it increases the economic benefits to the public as a whole.
In order to accomplish this objective of protecting Florida consumers and encouraging and protecting healthy competition by prohibiting unfair, predatory and anticompetitive practices, Section 526.304 of the Act prohibits refiners and non-refiners from selling motor fuel below cost, where the effect is to injure competition.
Eliminating below-cost pricing schemes encourages competition by preventing businesses from engaging in "predatory pricing" practices. The concern with below cost selling and other predatory pricing schemes is that the choice to sell at non-remunerative levels is motivated by the desire to force competitors out of business. The result is an overall lessening of competition, which in turn harms the public by reducing available choices, and by ultimately raising prices.[6]
By eliminating the predatory practices of selling motor fuel at below cost, the legislature is furthering a legitimate interest in protecting healthy competition in the marketing of motor fuel, thus increasing economic benefit to the public.
Many other states have enacted similar statutes prohibiting below cost sales in response to anticompetitive practices, and such legislation has withstood constitutional scrutiny. See, e.g., Hartsock-Flesher Candy Co. v. Wheeling Wholesale Grocery Co., 328 S.E.2d 144 (W. Va. 1984); Rocky Mountain Wholesale Co. v. Ponca Wholesale Mercantile Co., 68 N.M. 228, 360 P.2d 643, appeal dismissed, 368 U.S. 31, 82 S.Ct. 145, 7 L.Ed.2d 90 (1961); Simonetti, Inc. v. State ex. rel. Gallion, 272 Ala. 398, 132 So.2d 252 (1961); Louisiana Wholesale Distributors Ass'n v. Rosenzweig, 214 La. 1, 36 So.2d 403 (1948); State v. Walgreen Drug Co., 57 Ariz. 308, 113 P.2d 650 (1941); Moore v. Northern Kentucky Independent Food Dealers Ass'n, 286 Ky. 24, 149 S.W.2d 755 (1941); Dikeou v. Food Distributors Ass'n, 107 Colo. 38, 108 P.2d 529 (1940); State v. Sears, 4 Wash.2d 200, 103 P.2d 337 (1940); Annotation, Francis M. Dougherty, Validity, Construction, and Application of Statue Statutory Provision Prohibiting Sales of Commodities Below Cost  Modern Cases, 41 A.L.R.4th 612 (1985).[7] In the area of petroleum marketing, *238 both the Utah Motor Fuel Marketing Act and the Alabama Motor Fuel Marketing Act prohibit below cost sales of motor fuel, and have been upheld as constitutional in the face of due process challenges. State By and Through Div. of Consumer Protection v. Rio Vista Oil, Ltd., 786 P.2d 1343 (Utah 1990) (Utah Motor Fuel Marketing Act upheld in face of due process attack challenging ban on below cost sales); State ex rel. Galanos v. Mapco Petroleum, Inc., 519 So.2d 1275 (Ala. 1987) (Alabama Motor Fuel Marketing Act's prohibition on retail sales below cost held constitutional and not a violation of defendant's liberty interest). In both the Rio Vista and Galanos cases, critical to the courts' decisions was the fact that the legislation only restricted those sales where the effect of below cost selling was to injure competition and where the legislation did not impermissibly penalize for ordinary injury to competitors resulting from accepted marketing practices. Florida's Act also contains important safeguards against prohibiting innocent and legitimate sales below cost. In recognition of commercial realities and the fact that under certain situations below-cost selling is healthy for competition, legitimate price decreases are recognized. The Legislature carefully limited the restrictions in the Act to only those below cost sales harmful to competition and excluded "isolated, inadvertent incidents" of below cost selling. See § 526.304(2)(a), Fla. Stat. (1991).[8] More importantly to the facts of this case, Section 526.304(2)(b) of the Act expressly allows below cost sales made in good faith to meet the equally low price of a competitor in the same relevant geographic market. Although appellant argues that this constitutes an impermissible delegation of legislative authority, we disagree. This provision merely provides a defense, to one charged with selling below cost, by allowing them to defend themselves by showing that they have only responded to the improper acts of others. If anything, the existence of this provision in the Act supports our finding that the Act does not impermissibly interfere with constitutional rights and is reasonably designed to accomplish the objective of encouraging fair and honest competition. This is so because the Act, by ensuring that only those sales below cost designed for predatory purposes to suppress competition are prohibited, utilizes means which do not violate constitutional due process rights and are reasonably related to the Act's stated objectives. Cf. Commonwealth v. Zasloff, 338 Pa. 457, 13 A.2d 67 (1940) (statute which prohibited all sales below cost, including legitimate sales, held unconstitutional as unnecessarily severe and not rationally related to statute's objective).
In sum, we find that the Act is rationally related to furthering the legislature's legitimate objective of protecting competition in the retail motor fuel market by prohibiting predatory pricing practices which the legislature has determined are unfair.[9] Accordingly, *239 we uphold the constitutionality of the Motor Fuel Marketing Practices Act and affirm the order entered below.
Affirmed.
NOTES
[1] Prior to the enactment of the Motor Fuel Marketing Practices Act, Florida, along with Maryland, had enacted a retail divorcement statute to address certain anticompetitive practices in the retail marketing of motor fuel. See § 526.151, Fla. Stat. (1974); Md. Ann. Code, Art. 56, § 157E (Supp. 1977). This statute prevented refiners from directly operating retail motor fuel facilities, and was struck down by a Florida circuit court in 1975, after several major refiners challenged the statute as an unlawful exercise of the state's police power. See State ex rel. Gas Kwick, Inc. v. Conner, 453 So.2d 863, 864 n. 2 (Fla. 1st DCA 1984) (citing to unreported decision of Exxon Corporation, Shell Oil Company, Union Oil Company of California, and Phillips Petroleum Company v. Conner, Nos. 74-1449, 74-1577, and 74-1772 (Fla. 2d Cir.Ct., January 23, 1975). Thereafter, the United States Supreme Court in the case of Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), upheld the constitutionality of the Maryland retail divorcement statute, and, in 1984, the First District Court of Appeal resurrected Florida's retail divorcement statute in the case of State ex rel. Gas Kwick, Inc. v. Conner, 453 So.2d at 863. The Motor Fuel Marketing Practices Act was adopted in 1985 to replace retail divorcement with a more effective and pro-consumer statutory scheme to address specific unfair and predator practices in motor fuel marketing. See 1985 Fla. Laws ch. 85-74.
[2] At this hearing, the trial court also heard requests for injunctive relief involving similar violations of Section 526.304(1)(a), by four other plaintiffs against three other defendants. Those cases are not a part of this appeal.
[3] In recognizing that certain businesses require regulation under the police power in order to protect the public, the Court in Miami Laundry Co. noted that:

[W]hen the conditions in a business become such that the welfare of the public will not be adequately protected by unrestricted competition, or if it be shown that ruinous and chaotic conditions are otherwise about to be brought about in the business, that the economic existence of large numbers of people is being threatened, then the law may step in and prescribe regulations to correct the alleged or threatened abuses... .
Courts are not authorized to adjudicate questions of public policy involved in such regulations or to conduct an inquiry into questions of fact pertaining to matters of policy, but where the Legislature has made such an investigation and determination, unless shown to be clearly arbitrary, erroneous, or unwarranted, the courts will approve them.
Miami Laundry Co. v. Florida Dry Cleaning & Laundry Bd., 134 Fla. at 11, 12, 183 So. at 763, 764.
[4] As stated by one of the Act's sponsors at the time of its final passage:

[O]ur bottom line was the consumer as we were trying to work in also to allow the Hesses of the world and Tenneco to stay in business, to protect the jobbers, as well as to protect the independent service station, or the service station dealer themselves.
Fla.H.B., 690, 1985 Reg.Sess.
[5] In order to prevent anti-competitive practices, Florida enacted the Florida Antitrust Act of 1980, Chapter 542, Florida Statutes, which prohibits restraints of trade and the creation of monopolies. Several federal antitrust laws have also been enacted for the sole purpose of protecting competition. As noted in the Staff Analysis of the House of Representatives Committee on Commerce at the time the Act was passed:

The Sherman Act prohibits: horizontal price fixing between competing suppliers; suppliers from setting a dealer's or distributor's resale prices; and, a supplier from using illegal methods to gain a monopoly in a geographic market. Section 2 of the Clayton Act, known as the Robinson-Patman Act, prohibits a supplier from unfairly giving one dealer or distributor a price advantage over that dealer's or distributor's competitor. The Federal Trade Commission Act protects against "unfair methods of competition" and "unfair or deceptive trade practices."
The Committee noted that for most persons harmed by anti-competitive practices in the oil industry, recourse through the federal acts might prove to be prohibitively costly and lengthy, and that, to date, no Florida state law specifically addressed discriminatory pricing practices in the oil industry. The purpose for the creation of the Motor Fuel Marketing Practices Act was to specifically meet the need for regulation of motor fuel pricing by encouraging "a competitive environment in the oil industry by prohibiting certain pricing practices." Fla. H.R.Jour., Staff Analysis May 10, 1985 at 1 (Fla. C.S./H.B. 690).
[6] Pricing below cost is one of the characteristic features of predatory business conduct. As noted by one author, the predatory actor engages in conduct which:

will not maximize present or foreseeable future profits unless it drives or keeps others out or forces them to tread softly. Thus the predator may price substantially below the profit maximizing (or loss minimizing) price... . Such conduct makes sense if, but only if, it is seen as a means of driving out or controlling competitors. The losses currently being suffered or the profits currently being foregone by the predator are accepted in the expectation that they will be more than made up at a later date by monopoly profits which can be obtained after the competitive threat from other firms is ended. This kind of activity is to be differentiated, of course, from "salvage operations" aimed at reducing losses or from promotional activities.
Lawrence A. Sullivan, Handbook of the Law of Antitrust 113 (1977). For an informative discussion on predatory pricing practices and related behaviors, see Areeda & Turner, Predatory Pricing and Related Practices Under Section 2 of the Sherman Act, 88 Harv.L.Rev. 697 (1975).
[7] As noted by one commentator:

A majority of states have enacted "sales below cost" statutes, which typically forbid advertising, offering to sell, or selling below cost with anticompetitive intent or effect. Such statutes are not price-fixing laws ... but rather are aimed at ending "loss leader" selling, which has been defined as below-cost sales... . A second and equally important purpose of "sales below cost" statutes is to save the small independent merchant who cannot afford to sell below cost and is unable to compete with stores which do.
... [A]s a general proposition the enactment of "sales below cost" statutes is within a state's police power and such statutes have generally been upheld against challenges that the legislature is involved in an area which does not involve public health or welfare... .
Annotation, Francis M. Dougherty, Validity, Construction, and Application of Statue Statutory Provision Prohibiting Sales of Commodities Below Cost  Modern Cases, 41 A.L.R.4th at 617 (footnotes omitted) (emphasis supplied).
[8] Other categories of transactions exempt under the Act include liquidation sales, grand opening sales, and sales made under the order or direction of a court. § 526.309, Fla. Stat. (1991).
[9] Contrary to Sixty Enterprises' argument, the Act does not "set prices." It merely prohibits unfair below cost predatory pricing schemes when competition is injured. Thus Sixty Enterprises' reliance upon the Florida Supreme Court's decisions in Department of Insurance v. Dade County Consumer Advocate's Office, 492 So.2d 1032 (Fla. 1986), and Liquor Store, Inc. v. Continental Distilling Corp., 40 So.2d 371 (Fla. 1949), is misplaced. The Act is not an unlawful price fixing statute of the type invalidated in Liquor Store, Inc. and discussed in Department of Insurance. Below cost sales statutes do not fix the price of the merchandise, but only prohibit sales below cost when competition is injured. This distinction between below cost sales statutes and unlawful price fixing statutes is illustrated in the case of Rocky Mountain Co. v. Ponca Wholesale Mercantile Co., 68 N.M. 228, 360 P.2d 643, appeal dismissed, 368 U.S. 31, 82 S.Ct. 145, 7 L.Ed.2d 90 (1961). In Rocky Mountain Co., the appellant argued that a below cost sales statute violated substantive due process as price fixing, relying on fair trade act cases similar to Liquor Store, Inc. In dismissing these cases as unpersuasive, the New Mexico Supreme Court stated that the fair trade statutes struck down prohibited the sale of trademark merchandise at below the retail prices fixed by the manufacturer; whereas the below cost sales statute did not fix the price of the merchandise, but only prohibited below cost sales with intent to injure competitors or lessen competition. Rocky Mountain Co. v. Ponca Wholesale Mercantile Co., 360 P.2d at 646. The plain language of Section 526.304 reflects that the right to set prices is left up to the retail dealer. The statute merely prohibits the unfair and predatory practice of selling below cost. By eliminating predatory practices harmful to competition, such as below cost selling, § 526.304 prevents viable competitors from being forced out of business, which in turn enhances the total choices available to Florida's motorists.