701 So.2d 96 (1997)
STATE of Florida, Appellant/Cross-Appellee,
v.
Jeffrey SOBIECK, Appellee/Cross-Appellant.
No. 96-875.
District Court of Appeal of Florida, Fifth District.
September 26, 1997.
Rehearing Denied November 7, 1997.
*98 Robert A. Butterworth, Attorney General, Tallahassee, and Kellie A. Nielan, Assistant Attorney General, Daytona Beach, for Appellant/Cross-Appellee.
Donald A. Lykkebak and Michael P. Murphy, of Law Office of Donald A. Lykkebak, Orlando, for Appellee/Cross-Appellant.
W. SHARP, Judge.
The state appeals from the trial judge's orders which dismissed nine counts of an amended criminal information filed against Sobieck on double jeopardy grounds.[1] He had been charged with one violation of the RICO statute,[2] based on six predicate incidents involving resale of tickets in violation of section 817.36(2)(a), and one for making a false statement in violation of section 817.36(2).
Counts II, III, V, VI and VII involved resale of tickets in violation of section 817.36(2)(a), essentially repeating the RICO predicate incidents. Count VIII involved the conduct of an illegal financial transaction in violation of section 896.101(2)(a). Counts XI and XII involved the charge that Sobieck violated section 559.927(10), while registered as a seller of travel, selling tickets in violation of the statute, either not as part of a prearranged travel package which included transportation or accommodation, or did not resell the tickets on behalf of the original seller.
The trial court held that an earlier proceeding in a civil suit constituted a prior penalty and thus barred prosecution of the criminal counts because they were premised on the same conduct involved in the civil case. After Sobieck was arrested and charged in a multi-count information, he filed a complaint in the civil court seeking a temporary and permanent injunction to prevent confiscation of personal property belonging to him and his business, Alabama Prime Time Tickets, Inc. Alabama Prime Time Tickets is in the business of reselling sporting and other entertainment tickets to the public. The properties seized included a motor vehicle, office equipment, furniture, unsold tickets, cash and bank accounts.
The state responded in the civil suit by filing a complaint for forfeiture of the property. It sought to impose a civil penalty, and other relief designed to halt the business conducted by Alabama Prime Time Tickets. Sobieck requested an adversarial preliminary hearing pursuant to the Contraband Forfeiture *99 Act.[3] A default judgment against Sobieck and Alabama Prime Time Tickets was entered on September 9, 1995. Sobieck's attorney in the civil case was, at that time, incarcerated in Alachua County. He knew about the proceeding, but no one appeared to contest the summary default judgment. No one moved to set aside the default. No appeal was taken from the final judgment.
The final judgment in the civil case forfeited all of the property subject to the forfeiture suit. It also ordered forfeiture under chapter 895 (the RICO Act) of any additional funds or property which were the result of unlawful ticket sales, enjoined further ticket sales, and revoked all licenses and corporate charters of Sobieck or his business to operate in the resale of tickets business. It also assessed two civil penalties, totalling $20,000.00 for two separate actions which involved unfair and deceptive trade practices, pursuant to section 501.2075 (a civil penalty of $10,000.00 for each violation) for willfully violating section 501.204 by engaging in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.
The trial court ruled on February 20 and 21, that forfeiture of the property, which included a $10,000 Certificate of Deposit, $56,000.00 worth of unsold tickets,$24,000.00 in cash and imposition of the $20,000.00 civil penalty, constituted "punishment" for purposes of the double jeopardy clause. Since criminal sanctions were being sought in a subsequent proceeding for the same acts, which triggered forfeiture and imposition of the penalties, the criminal counts based on RICO, and violations of sections 559.927, 501.201-213, and 817.36(2)(a) must be dismissed. It relied on Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). We reverse.
The trial court also ruled that section 817.36(2)(a), which makes the offering for sale of any ticket to any "sporting exhibition, athletic contest, theater, or any exhibition where an admission price is charged, and receives a price in excess of $1 above the retail admission price charged therefor by the original seller," a second degree misdemeanor, was constitutional as against due process and equal protection challenges. The appellee cross-appeals this ruling. We affirm.

I. Double JeopardyCivil Forfeiture
The trial court ruled that Sobieck had been criminally punished in the prior civil proceedings in which the state had sought and obtained forfeiture of personal property, cash, tickets, a $10,000.00 certificate of deposit put up as collateral for operation of the business as a registered seller of travel pursuant to section 559.929, and a Jeep Cherokee. It also ruled that the assessment of two $10,000 civil penalties for two incidents of Sobieck's violation of section 501.204 (commission of unfair or deceptive acts or practices in the conduct of trade or commerce), presumably based on Sobieck's failure to follow section 559.927 in reselling tickets as a registered seller of travel, constituted a form of criminal punishment. It concluded the concept of double jeopardy constitutionally[4] barred the criminal prosecution for acts arising out of the same events for which the forfeiture and penalties arose.
With regard to the forfeitures, we think that United States v. Ursery, ___ U.S. ___, ___, ___, 116 S.Ct. 2135, 2137, 2144, 135 L.Ed.2d 549 (1996), which the trial court did not have the benefit of reading prior to making its ruling, has substantially clarified Halper, Austin and Kurth Ranch, which the supreme court noted had been misread by the federal court of appeal.[5]. In Ursery, the federal government instituted civil forfeiture *100 proceedings against Ursery's house, on the basis that it had been used to facilitate illegal drug transactions. He settled that claim and was subsequently convicted of manufacturing marijuana. He argued his criminal prosecution was barred by double jeopardy. The circuit court of appeals agreed.
In the case consolidated with Ursery,[6] the federal government filed a civil in rem complaint against property seized from, or titled to, Arlt and Wren, or Payback Mines, a corporation controlled by Arlt. The property was involved in money laundering, and constituted the proceeds of a felonious drug transaction. Arlt and Wren were prosecuted and convicted on drug and money laundering charges. They argued the forfeiture proceedings were barred by double jeopardy and the circuit court agreed. The United States Supreme Court held that the civil in rem forfeitures were not punishments, and therefore double jeopardy was not applicable as a bar in either case.
The Court recognized that since the earliest years of this nation's existence, Congress has authorized the government to seek parallel in rem civil forfeiture actions and criminal prosecutions based on the same underlying events. It re-established the rules set out in United States v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); One Lot Emerald Cut Stones and One Ring v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); Various Items of Personal Property[7]v. United States, 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931). In general, civil forfeitures of property involved in criminal activity, or which constitute its proceeds, are not criminal trials or punishments. It distinguished Halper as having involved a civil penalty, not a civil forfeiture. Id. at ___, 116 S.Ct. at 2138. It distinguished Austin as not involving the double jeopardy clause at all, but rather the Eighth Amendment excessive fines clause. Id. And, it distinguished Kurth Ranch as having involved a punitive tax which was the functional equivalent of a successive criminal prosecution. In analyzing civil forfeitures, the Ursery opinion (Part II-C) conducted the two-part inquiry established in 89 Firearms, at 362-366, 104 S.Ct. at 1105-1107. First, did the Legislature intend the proceedings to be criminal or civil; and second, was the proceeding so punitive in fact as to persuade the court that the forfeiture proceedings are not fairly viewed as civil in nature?
The forfeiture in this case was bought pursuant to chapter 932 the Florida Contraband Forfeiture Act, which sets out the goals and procedures to be followed. Its stated purpose is "to deter and prevent the continued use of contraband articles for criminal purposes while protecting the proprietary interests of innocent owners and lienholders, and to authorize such law enforcement agencies to use the proceeds collected under the Florida Contraband and Forfeiture Act as supplemental funding for authorized purposes." § 932.704(1), Fla. Stat. (Supp.1996). But the statute states the potential for obtaining revenues from forfeitures is not its overriding purpose. The procedure set forth to be used is civil, and the case must proceed before a circuit judge in the civil division with the Florida Rules of Civil procedure governing. § 932.704(2), Fla. Stat. (Supp.1996). Thus the Legislature's intent that the forfeiture be a civil remedy is express. Chapter 932 further provides that the ultimate issue of forfeiture shall be decided by a jury, unless such right is waived. § 932.704(3), Fla. Stat. (Supp.1996). And the seizing agency proceeds against the contraband article by filing a complaint. § 932.704(4), Fla. Stat. (Supp.1996). Notice must be given to persons who may claim an interest in the subject property. § 932.704(5), Fla. Stat. (Supp.1996). The state has to show by clear and convincing evidence that the contraband article was being used in violation of the Florida Contraband Forfeiture Act. § 932.704(8), Fla. Stat. (Supp.1996). These provisions satisfy the requirements of procedural due process. See Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991).
*101 The Florida Contraband Forfeiture Act defines contraband articles as, among other things:
Any personal property, including, but not limited to, any ... vehicle of any kind, money, securities, books, records, research, negotiable instruments, or currency, which was used or was attempted to be used as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, ... or which is acquired by proceeds obtained as a result of a violation of the Florida Contraband Forfeiture Act.
§ 932.701(2)5, Fla. Stat. (Supp.1996).
Pursuant to the counterclaim filed by the state in the civil proceeding in this case, the personal property and cash were all alleged to be either property used in a business scheme or pattern to sell tickets in violation of section 817.36, or proceeds thereof. The forfeiture proceeding was not contested nor appealed. Nor is there any basis to conclude from the facts alleged that the property seized was not Sobieck's or that of his business, Alabama Prime Time Tickets, that it was not used to conduct the illegal, ticket-sale business, or that it was not proceeds of that business. Compare Martinez v. Heinrich, 521 So.2d 167 (Fla. 2d DCA 1988).
Florida's RICO Act, chapter 895, makes engaging in a pattern of illegal practices under chapter 817 a felony. It also sets forth alternative civil and criminal penalties. The civil penalty includes civil forfeiture of all property, including money used in the course of the business or its proceeds. It provides for institution of civil proceedings to forfeit such property. It further provides that the application of one civil remedy under that act does not preclude the application of any other remedy, civil or criminal and that civil remedies under the act are supplemental and not mutually exclusive.
The civil forfeiture in this case was apparently pursued under section 932.701-707, using the RICO statute to elevate the otherwise misdemeanor crimes to a felony. However, pursuant to Ursery, this civil forfeiture proceeding does not impose punishment in the sense of implicating the double jeopardy clause. See State v. Moretti, 681 So.2d 754 (Fla. 2d DCA 1996); In re Forfeiture of 1986 Pontiac Firebird, Vehicle ID No. 1G2FS87H3GN236562, Florida Tag No. HWK 81Y, 600 So.2d 1178 (Fla. 2d DCA 1992). Florida courts view such forfeiture proceedings as independent of any factually related criminal action. Id. It is a proceeding against the property; not the person. See Ursery. Like the federal statutes involved in United States v. One Assortment of 89 Firearms, the state forfeiture statute, does not depend on proof that a person has committed a crime, but only that the property was used in or is the product or proceeds of a crime.
It also might be argued in this case that Sobieck never established his rights or ownership of the property forfeited due to his default in the civil forfeiture proceeding. Thus it cannot be clearly said that Sobieck was "punished" by the forfeiture. See generally United States v. Baird, 63 F.3d 1213 (3d Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996); United States v. Cretacci, 62 F.3d 307 (9th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 2528, 135 L.Ed.2d 1052 (1996); United States v. Penny, 60 F.3d 1257 (7th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); United States v. Arreola-Ramos, 60 F.3d 188 (5th Cir.1995); United States v. Torres, 28 F.3d 1463 (7th Cir.), cert. denied, 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994); United States v. Doyer, 907 F.Supp. 1519 (M.D.Fla.1995); United States v. Falcon, 902 F.Supp. 234 (S.D.Fla. 1995). In Ursery, the defendant appeared and contested the forfeiture and later settled the claim.
Whether these forfeiture proceedings were so punitive in fact[8] that double jeopardy should be invoked as a bar to the criminal suit, should not be available as an argument in cases where the property seized pursuant to the civil remedy was property used in the commission of a crime, or its proceeds, because *102 there will always be the remedial purpose identified in Ursery. The Court recognized in Ursery that it is a valid non-punitive goal for Congress or the state legislature to forfeit such property. These policies encourage property owners to take care in managing their property, and ensure that they will not permit their property to be used for illegal purposes. It also makes illegal behavior unprofitable, and is designed to prevent future illicit use of property, which are valid remedial purposes.
Other federal courts have held that forfeiture of contraband or its proceeds is not punishment. This is because by its very nature, a person is not entitled to possess contraband or proceeds derived from it. United States v. $184,505.01 in U.S. Currency, 72 F.3d 1160 (3d Cir.1995), cert. denied, ___ U.S. ___, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996); United States v. Tilley, 18 F.3d 295 (5th Cir.), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); United States v. Doyer. Further, such courts have reasoned that forfeiture of contraband and its proceeds is inherently proportional to the damage caused by the illegal activity. Thus the final element of Ursery cannot be proved in such cases. See Tilley; United States v. Salinas, 65 F.3d 551, 553 (6th Cir.1995); United States v. $184,505.01 in U.S. Currency; United States v. Tilley. The property and the proceeds on hand at the time of the seizure were ipso facto directly proportional to the illegal ticket sales.

II. Double JeopardyCivil Penalty
The United States Supreme Court said in Ursery that in some cases, under limited circumstances, a civil penalty may be deemed to be punitive for purposes of the double jeopardy clause. The Ursery Court pointed out that in Halper, the fine was 220 times greater than the governments' damages. It "restated" Halper in this regard, limiting its application to cases where a civil penalty is so extreme and so divorced from the government's damages and expenses as to constitute punishment. It said of Halper that a fixed penalty provision was used to subject a prolific but "small-gauge offender" to a sanction so overwhelmingly disproportionate to the damage he caused that there was no rational relation to the goal of compensating the government for its losses. It remanded the cause to determine the government's damages and costs and to decide if the penalty sought in fact constituted a second punishment.
In this case, there was no such disproportionateness shown or established. As stated above, Sobieck was fined $10,000.00 for two willful violations of the Deceptive and Unfair Trade practices Act, section 501.2075, arising out of two transactions engaged in as a registered seller of travel, pursuant to section 559.927. The penalty imposed is expressly stated by the statute as being a civil penalty. Under the provisions of the statute, the state has the option of waiving the civil penalty if the person, firm, etc., has made full restitution or reimbursement or has paid actual damages to the consumers who have been injured by the unlawful acts or practices. No such restitution was accomplished in this case.
Evidence was proffered to the court that Sobieck and his business had been selling tickets for grossly inflated prices to the general public over a seven-month period, to hundreds of customers. Government agents made an extensive investigation of the business and numerous ticket sales during that time period. Over $300,000.00 in illegal ticket-sale proceeds were deposited during that time period in a Barnett Bank account. However, at the time of the seizure, only $1,600.00 remained in the account. Sobieck's plan was to increase the pre-tax profit of the business to $400,00.00 in the next year.
The fact that the Legislature chose to make such conduct a crime as well as a basis for a civil penalty is not determinative. See Ursery; United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Here the amount of the penalties, when viewed in the context of the scope of the illegal business generating such large amounts of illegal ticket sales, and the resulting unrecoverable damage to the general public, does not make the penalties appear disproportionate on their face. In light of the size and scope of the business, the penalties appear more analogous to traditional civil damages. It does not appear necessary or required that we remand for a presentation of evidence on damages to the public or the government, or *103 costs incurred in the seven-month investigation and prosecution of the civil action, given the obvious damage to the general public due to Sobieck's scalping practices for which restitution cannot be made. If it could, presumably restitution and the government's costs would greatly exceed the fines imposed. Compare United States v. One Single Family Residence Located at 18755 North Bay Road, Miami, 13 F.3d 1493 (11th Cir.1994); Halper.

III. Due Process; Equal Protection
Sobieck argues on cross-appeal that the trial court erred in determining that section 817.36, Florida Statutes, does not violate the due process or equal protection clauses of the state and or federal constitutions.[9] Section 817.36(2), provides:
(a) Whoever shall offer for sale or sell any ticket good for admission to any sporting exhibition, athletic contest, theater, or any exhibition where an admission price is charged and request or receive a price in excess of $1 above the retail admission price charged therefor by the original seller of said ticket shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s.775.083.
(b) The provisions of this subsection shall apply to travel agencies that have an established place of business in this state, which place of business is required to pay state, county and city occupational license taxes, unless such agencies are registered sellers of travel pursuant to part XI of chapter 559, and adhere to the restriction of selling said tickets as part of the travel packages specified in that part, and such travel agencies are reselling said tickets on behalf of the original sellers of said tickets. When any original seller of tickets provides a travel agency with tickets in bulk, the travel agent shall be deemed to be reselling the tickets on behalf of the original seller.
The trial judge ruled that sale of tickets to the general public for the events outlined in section 817.36 was "affected with the public interest" within the meaning of Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). She also concluded that Florida's substantive due process test was indistinguishable from the federal one, citing Department of Law Enforcement v. Real Property. We agree.
In Nebbia, the Court said the Legislature can regulate and limit the terms upon which persons may conduct a certain business, if it is affected with public interest, in the sense that the economic policies adopted are designed to promote the public welfare, and the means shown are reasonably related to that purpose. A person seeking to challenge a statute on this basis has a very heavy burden to carry. In a later case, the Court said that those seeking to challenge legislation on such grounds must convince the Court that the legislative facts on which the statute is based could not reasonably be conceived to be true by the governmental decision maker. If the question is debatable, based on the considerations presented to the legislature, the statute is constitutional. See Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).
In Department of Insurance v. Dade County Consumer Advocate's Office, 492 So.2d 1032 (Fla.1986), the Florida Supreme Court held that a statute which prevented rebates by insurance agents to their clients was unconstitutional on this ground, finding no relationship with its avowed purpose of promoting the public's health, safety or welfare. However, in Fraternal Order of Police, Metropolitan Dade County, Lodge No. 6 v. Department of State, 392 So.2d 1296 (Fla. 1980), the court upheld a statute that placed restrictions and limitations on public relations persons soliciting contributions on behalf of law enforcement organizations. The court held the statute met the constitutional test for due process because there was a greater potential for abuse in making solicitations for law enforcement groups than other groups and the enactment addressed the potential harms found to exist.
Although there is no expressly stated legislative purpose for section 817.36, this is not determinative. A statute is presumed to be constitutional until shown to be otherwise. If any statement of facts can reasonably be conceived to exist that will sustain legislation *104 or classifications attempted by the Legislature, the law should be upheld. North Ridge General Hospital, Inc. v. City of Oakland Park, 374 So.2d 461 (Fla.1979). The court cannot say, based on its own judicial knowledge, that the Legislature could not have had any reasonable ground for believing the particular classification or regulation was arbitrary or unreasonable. Rather, the party seeking to assail the statute must carry the burden of showing it is arbitrary and unreasonable. North Ridge, at 461. See also In re Estate of Gainer, 466 So.2d 1055 (Fla. 1985).
We think the statute attempts to regulate areas of legitimate state concernpublic events and tourism. Its obvious goal is to protect the consuming public and event promoters from the economic harm done to them by persons who artificially corner the market for tickets to public events. By making an exception for sellers of travel, it seeks to promote tourism, and regulate the travel industry. Similar statutes in other states have been upheld by the state courts.[10] As pointed out by Diamond in his law review article cited above, ticket scalpers deprive consumers of a valuable servicethe availability of low-cost tickets through box office sources. The effect on the ticket market by scalpers who buy up available tickets for resale is to lessen public opportunity to buy tickets at the lowest prices. Statutes like section 817.36 are designed to prevent unfair cornering of the market and limit opportunities to manipulate prices, both of which damage the general public and the promoters of public events. This appears to us to be a legitimate area in which the state may impose economic regulations. See Sixty Enterprises, Inc. v. Roman & Ciro, Inc., 601 So.2d 234 (Fla. 3d DCA 1992).
Sobieck also argues that no rational basis exists to allow registered sellers of travel to avoid the limits of section 817.36, if they comply with the regulations and limitations contained in chapter 559, and make sales on behalf of the original seller and as part of a travel package. However, he failed to make such a showing below. And, looking at the statute as a whole, we do not think this classification is without a rational basis. Sellers of travel are required to be bonded and financially answerable to travelers injured by any fraud, misrepresentation, breach of contract or violation of any provision of the laws governing registered sellers of travel. They are required to register annually with the state, and provide extensive information concerning their business operations and agents, pay a registration fee, keep extensive records, and are subject to civil, administrative, or criminal penalties. These heightened duties and responsibilities imposed upon registered sellers of travel provide a legitimate basis for allowing them to sell tickets in a manner different from that allowed to a general member of the public. See Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla.1983). See also Soverino v. State, 356 So.2d 269 (Fla.1978); State v. Hodges, 614 So.2d 653 (Fla. 5th DCA 1993).
Accordingly, we reverse the orders on appeal and remand for further proceedings.
REVERSED and REMANDED.
PETERSON and GOSHORN, JJ., concur.
NOTES
[1] U.S. Const. amend. V; Art I, § 9, Fla. Const.
[2] §§ 895.03(3), 895.02(3) and 895(4), Fla. Stat. (1995).
[3] § 932.701-707, Fla. Stat. (1996).
[4] U.S. Const. amend. V.
[5] Specifically, that the supreme court had receded from the rule that in rem forfeiture is a remedial civil sanction distinct from potentially punitive in personam civil penalties (such as fines), and does not constitute punishment for double jeopardy purposes.
[6] Ursery was consolidated with U.S. v. $405,089.23 in United States Currency.
[7] Also referred to as Waterloo Distilling Corp. v. U.S.
[8] The final prong in the test set out in United States v. Ursery, ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).
[9] U.S. Const. amend. V and XIV; Art. I, §§ 9 and 2, Fla. Const.
[10] Thomas A. Diamond, Ticket Scalping; A New Look at An Old Problem, 37 U. Miami L.Rev. 71 (1988).